### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **JET SYSTEMS, LLC**<br>**48015-1 Pine Hill Run Road**<br>**Lexington Park, Maryland 20653**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. <u>25-193 C</u>

### COMPLAINT

Plaintiff JET Systems, LLC, ("JET"), by and through its undersigned counsel,

brings this Complaint against Defendant United States of America, by and through the

U.S. Department of the Navy ("DoN"), and states as follows:

### I.    INTRODUCTION

1.    This case arises out of concerted action by the Defendant United States of

America, through the Naval Air Systems Command ("NAVAIR") of the U.S. Department

of Navy, to copy Plaintiff's proprietary Adaptive Layer Framework ("ALF") software

products and documentation without Plaintiff's permission to use for its own purposes

without compensating Plaintiff and causing Plaintiff harm.

2.    Plaintiff alleges herein that Defendant United States has breached an implied-in-

fact contract to make payment for Plaintiff's ALF software products and documentation.

3.    This action seeks to recover damages for such breach of contract.

### II.    PARTIES

4.    Plaintiff JET is a Maryland limited liability company with its principal place of

business located at 48015-1 Pine Hill Road, Lexington Park, Maryland 20653. JET

develops, maintains, and innovates systems for specific and common mission

capabilities, combat aides, and surveillance systems. JET supports platforms related to Small Unmanned Aerial Vehicles ("SUAV"), Unmanned Aerial Vehicles ("UAV"), and manned vehicles for the Department of Defense ("DoD"), the National Aeronautics and Space Administration ("NASA"), the Department of the Army ("DoA"), and other Government agencies. JET provides solutions through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use. The Government utilizes JET to provide ongoing support activity or to prepare the customer to be a lead systems integrator. JET has developed its proprietary Adaptive Layer Framework ("ALF") software products and documentation.

5.      Defendant United States of America, in this matter has acted by and through the U.S. Department of the Navy ("DoN"), Naval Air Systems Command ("NAVAIR"), which upon information and belief is headquartered in Patuxent River, Maryland with military and civilian personnel stationed at eight locations across the continental United States and one site overseas. According to its website,

https://www.navair.navy.mil/organization/NAVAIR, accessed on January 27, 2025, NAVAIR delivers integrated air warfare capabilities to enable the fleet to compete, deter, and win – tonight, tomorrow and in the future.

### III.    <u>JURISDICTION AND VENUE</u>

6.      This Claim is made under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109, for breach of an implied-in-fact contract. Pursuant to the Tucker Act, the United States Court of Federal Claims ("USCFC") may "render judgment upon any claim against the United States founded … upon any … implied contract with the United States … ." 28 U.S.C. § 1491(a).

7.      "An implied-in-fact contract is one founded upon a meeting of the minds and is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Panther Brands, LLC v. United States*, 146 Fed. Cl. 204, 214 (2019), *citing Turping v. United States*, 913 F.3d 1060, 1065 (Fed. Cir. 2019) (quoting *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003).

8.      "An implied-in-fact contract must meet the same requirements as an express contract (citation omitted). These include '(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract.'" *Id.*, *citing Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380-81 (Fed. Cir. 2019) (quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)).

9.      Subsection (a)(2) of § 1491 grants the USCFC "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1)" of the CDA, "including a dispute concerning termination of a contract, rights in tangible and intangible property … and other non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2).

10.     The term "contracting officer" means an individual who, by appointment in accordance with applicable regulations, has the authority to make and administer contracts and to make determinations and findings with respect to contracts; and includes an authorized representative of the contracting officer, acting within the limits of the representative's authority. 41 U.S.C. § 7101(6). The term "contractor" means a party

to a Federal Government contract other than the Federal Government. 41 U.S.C.

§ 7101(7).

11.     Following the submission of a claim by a contractor to the contracting officer

pursuant to 41 U.S.C. § 7103, and the contracting officer's decision, if adverse to the

contractor, the contractor may appeal in the USCFC. *See* 41 U.S.C. § 7104(b).

12.     The USCFC would then have exclusive subject matter jurisdiction over Plaintiff's

claims pursuant to 41 U.S.C. § 7104(b); and 28 U.S.C. § 1491.

13.     28 U.S.C. § 1491 provides the Government's limited waiver of sovereign

immunity for claims against the United States founded on an implied contract with the

United States.

14.     Pursuant to 41 U.S.C. § 7103, on or about July 29, 2024, Plaintiff submitted a

certified claim to the contracting officer containing the substance of this Complaint,

which was acknowledged as received on August 8, 2023. The contracting officer,

Kathryn G. Matisick, denied the certified claim by letter dated October 7, 2024 (copy

attached as Exhibit 1 hereto), thus allowing Plaintiff to bring its Complaint in this Court

pursuant to 41 U.S.C. § 7104(b).

## IV.    FACTS

15.     The DoN has had a continuing interest in Plaintiff's Adaptive Layer Framework

products. The term Adaptive Layer Framework is known by DoN and throughout the

industry to refer to Plaintiff's products. The DoN even wrote ALF into its Core Avionics

Master Plan 2020 ("CAMP"), attached as Exhibit A hereto. *See* CAMP at Appendix A-1, page 10: under

> 2. Funded Enhancements and Potential Pursuits – "Open Architecture Middleware Interface to Operational Flight Profile (OFP) – Adaptive Layer Framework (ALF) (2022)]."

The description included the statements that "OPNAV has funded PMA-209 to generate such middleware to enable more efficient utilization of legacy platform OFP code and software applications," and "the first development effort will result in the generation of modules that can simplify and reduce the cost of similar middleware development efforts and implementation of developed software on other platforms." In other words, the US Navy considers Plaintiff's ALF products to be exemplary of the modular, open architecture middleware that the CAMP 2020 has both funded and whose development DoN intends to pursue further.

16.    Since at least 2019 the Government has expressed to JET its desire to acquire and incorporate JET products in its array of systems to support its mission. Specifically, on or about Friday, June 28, 2019, Barry Foltz of the NAVAIR PMA-209 Air Combat Electronics Program Office ("PMA-209") wrote in a text message to Scott Jaster

> I'd love to see jet get the f18e/F ofp away from boeing. They get $200.0M each release every two years and have pma265 over barrel. . .

A copy of the June 28, 2019 text message is attached hereto as Exhibit B.

17.    The inclusion of Plaintiff's ALF in the DoN's CAMP 2020 as the primary software framework solution and the fact that money was obligated demonstrated a long-term intent for the DoN to use Plaintiff's products. This long-term intent is further evident in an August 22-23, 2023 email exchange between Scott Jaster of JET and Roberto Semidey

of DoN's F/A-18 & EA-18G Program Office, PMA-265. In that exchange, Mr. Semidey

asks for guidance from JET regarding the elements and pricing of deliverables to be

included in DoN's future plans through Fiscal Year 2026 and beyond. The projected

costs for those deliverables were incorporated in a draft PowerPoint slide included in

the email. The slide projected Phases I, II, and III of the DoN's Processing Infrastructure

Modernized Architecture (PRIMA) plan. An updated version of the slide was

incorporated as page 4 in a PowerPoint presented in a briefing titled "PRIMA's

Transformation of F/A-18 – Faster, Cheaper, Innovative Capability." The updated slide

projected Phases I, II, III, and IV, with firm anticipated costs assigned to Phases I, II,

and III. The August 22-23, 2023 email exchange together with the briefing PowerPoint is

attached hereto as Exhibit C.

18.     Consistent with the DoN's interest in Plaintiff's Adaptive Layer Framework

products, the Government began negotiating directly with JET regarding the use of ALF

in the MCAP program, along with the DoN's contractor J.F. Taylor, Inc. ("JFTI").

Specifically, on or about April 18, 2022, Scott Jaster of JET via text message told Jeff

Williamson of PMA-209/Multi-Use Laboratory Environment ("MULE")

> wanted to close a loop on my conversation with JFT. They are apparently
> wanting to bring us on to start working MCAP software, but they said they
> had hardly any direction with that, so I suggested some things to get the
> ball moving, and they said that sounds fine to them as long as it was fine
> with you. So I wanted to go over those details with you."

Jeff Williamson of PMA-209 responded "We are working to get money to everyone bu[t]

it's looking more like late June. I believe jfti is sitting [*sic*] up a joint meeting." A copy of

the April 18, 2022 text message exchange is attached hereto as Exhibit D.

19.     As part of a contract JFTI had with the DoN to design, develop, build, and test

prototype computers for the NAVAIR PMA-209 Air Combat Electronics Program Office

("PMA-209") Mission Computer Adjunct Processor ("MCAP") Program, DoN asked JFTI

to issue a purchase order to JET for JET's proprietary Baseline ALF software products

and documentation.

20.     Prior to issuing a Request for Quote for Baseline ALF, JFTI relayed to JET the

Government's follow-on plans for acquiring enhanced products from JET after delivery

of Baseline ALF. Specifically, in a May 17, 2022 email Matt Campbell stated

> I did talk with Jeff Williamson [of PMA-209] today and he re-iterated
> something I was missing … that the government wants you to deliver the
> ALF products as they exist today (which I understand is not in a Red Hat
> Linux OS correct?) up front in the program (with government rights of
> course). This will give you something to bill against immediately while the
> Red Hat version is being developed.

A copy of the May 17, 2022 email is attached hereto as Exhibit E.

21.     The Government confirmed directly with JET their follow-on plans for acquiring

enhanced products from JET, in a series of text message and telephone conversations

occurring between May 20 and May 25, 2022. First, in a May 20 text message in which

Scott Jaster told Jeff Williamson of PMA-209

> Was just thinking about what you said about 'phase 2', the [20]23 money,
> and 'putting everything together', I just wanted to understand better what
> that was so I can differentiate it from what we are doing with hosting onto
> RHEL and MCAP.

Further, in a May 25 text message Scott Jaster followed up, again communicating

directly with Jeff Williamson: "The total number for RHEL on to MCAP (with all of the

interfaces and APIs and breakout of functional decomposition to include leverageable

SDK and Core interfaces) Was initially $7.68M like you and I discussed previously, but

you said you only had $8M for us that effort." After these and more text messages as

well as a telephone conversation with Scott Jaster, Jeff Williamson replied via text

message "No worries." A copy of the text messages between May 20, 2022 and May 25, 2022 are attached hereto as Exhibit F.

22.    On August 1, 2022 Scott Jaster of JET and Matt Cambell of JFTI discussed via email the precise contents of JET's proprietary Baseline ALF software products and documentation. A copy of the August 1, 2022 email exchange between Mr. Jaster and Mr. Cambell is attached as Exhibit G.

23.    SDK (Software Development Kit), Core, software adapters, and support to MULE from JET were not included in JET's Baseline ALF software products and documentation. This fact is made plain in the 1:03 p.m. Monday, August 1, 2022 email from Scott Jaster of JET to Matt Campbell of JFTI, in which Scott Jaster points out ". . . it appears that the MULE is expecting product delivery *and* additional training and interaction, which is fine. However, this 4.074M is *a product purchase only*[.]" (italics added). In that same email, Scott Jaster provides a detailed "list of deliverables that were originally discussed and priced out for this $4.074M." In a response email less than two hours later, Matt Campbell of JFTI states

> We will take the list below and make sure that is what we put in the PO for Baseline ALF. If we need more documents than that we can possibly include those in the 2nd PO. But we will have separate meetings to talk about what is required for that effort.

See Exhibit G.

24.    On or about August 5, 2022, JFTI issued the Request for Quote, a copy of which is attached as Exhibit H hereto.

25.    Three days later, on or about August 8, 2022, JET responded with a Quote, a copy of which is attached as Exhibit I hereto.

26.     JFTI accepted JET's bid and on or about August 17, 2022 issued Purchase Order 309975 ("P.O. 309975"), a copy of which is attached as Exhibit J hereto.

27.     P.O. 309975 was issued pursuant to Standard Terms and Conditions ("ST&C") appearing on JFTI's website. A copy of the ST&C is attached as Exhibit K hereto.

28.     The ST&C, Paragraph 28, summarizes the applicable DFARS/FAR Clauses for all procurements, included among which is DFARS 252.227-7014 (Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation).

29.     DFARS 252.227-7014 applies to P.O. 309975 because JET's proprietary Baseline ALF software products and documentation are not "commercial computer software" as defined in Sections (a)(1) and (5) of the DFARS.

30.      Had the P.O. gone forward, the Government might have rights in the delivered software and the documentation pursuant to DFARS 252.227-7014(b)(3), but the P.O. did not go forward when the Government breached its implied-in-fact contract with JET and when JFTI at the Government's direction canceled P.O. 309975.

31.     P.O. 309975 required delivery of the software and documentation on or before September 11, 2022.

32.     The only written contract by and between Plaintiff and the DoN is set forth in the items discussed above and attached as Exhibits H-K hereto as the DoN adopted P.O. 309975. As described below there are other contracts implied in fact between Plaintiff and the DoN.

33.     PMA-209 was sufficiently aware of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, that

PMA-209 accepted delivery of ALF software directly from JET, instead of from the Prime contractor JFTI. Despite this awareness, PMA-209 returned its authorized copy of ALF not directly to JET Systems, but rather to JFTI. These facts are admitted in a November 13, 2023, letter from Commander, Naval Air Systems Command to Office of the National Ombudsman, U.S. Small Business Administration, a copy of which is attached as Exhibit L.

34.     Even prior to receiving instructions from PMA-209 regarding delivery of ALF directly to the Government by JET Systems, JFTI had given similar instructions to JET Systems, in a letter dated August 5, 2022. A copy of the August 5, 2022, letter is attached as Exhibit M.

35.     In an email of August 18, 2022, Kim Skidmore of JFTI confirmed and approved that JET Systems would deliver ALF directly to the Government. The August 18, 2022, email is attached as Exhibit N.

36.     In a text message exchange September 6-7, 2022, Jeff Williamson of PMA-209/MULE acknowledged JET Systems' desire to avoid delivery of ALF Software to or through JFTI. The text message exchange of September 6-7 is attached as Exhibit O.

37.     On or about September 9, 2022, after discussions with the Government, JET delivered a copy of its Baseline ALF source code and documentation directly to the Government.

38.     In an email sent at 8:22 a.m. Tuesday, September 13, 2022 – after JET had successfully delivered its Baseline ALF source code and documentation directly to the Government per P.O. 309975, Matt Campbell of JFTI explicitly acknowledged that ALF

Core and SDK "were not listed as deliverables on our current order." However, Matt

Campbell persisted, inquiring on behalf of the Government

> Could they be added to this order? IE are you willing to deliver them with
> government rights? (JFTI is willing to modify the order request if need be)
> If they were to be added to this order, would there be additional cost? If so, how
> much?
> You mention they are both still in development. How much more time is needed
> to finish development?

In response to the emailed questions, Scott Jaster of JET responded at 11:44 a.m.

Tuesday, September 13, 2022

> As for ALF Core and SDK, those items will not be "completed" within
> enough time to add them to this particular transaction that we are trying to
> close out, but they can certainly be added on as a future delivery if
> desired.

The email exchange of Tuesday, September 13, 2022 is attached hereto as Exhibit P.

39.     On or about September 22, 2022, by his signature, Kevin Pilkerton of PMA-

209/Multi-Use Laboratory Environment ("MULE") signed for receipt of a DVD comprising

ALF PowerPC 653 Supplemental Software. On September 26, 2022, Kevin Pilkerton

signed for receipt of a DVD comprising ALF PowerPC 653 Test Cases. PowerPC 653

Supplemental Software and PowerPC 653 Test Cases were not in the P.O., but were

provided by JET to the Navy after Navy communicated difficulty in implementing ALF.

Copies of the two signed receipts are attached as Exhibit Q.

40.     On or about September 27, 2022 after JET had delivered Baseline ALF source

code and documentation directly to the Government, Matt Campbell of JFTI sent an

email to Scott Jaster of JET, relaying to JET a request from the Government to amend

P.O.309975 to include delivery of products and services not included in P.O. 309975

(ALF Core, SDK, and support to MULE), in exchange for "a 50% payment for what you

have delivered so far." A copy of the September 27, 2022, email from Matt Campbell is attached as Exhibit R. Given that JET had already fully met its obligations under P.O. 309975, JET did not accept the coercive offer from JFTI and the Government.

41.     In an email sent September 28, 2022, Kevin Pilkerton of PMA-209 announced that the MULE team had successfully built the JET-delivered ALF software in VxWorks. A copy of the September 28, 2022, email from Kevin Pilkerton of PMA-209 is attached hereto as Exhibit S.

42.     In a text message exchange on October 18, 2022, between Scott Jaster of JET and Jeff Williamson of PMA-209/MULE while the Government was withholding payment on P.O. 309975, Williamson stated "I worked to get you 50% you did[n't] take it." After Scott Jaster explained that JET had satisfied its obligations under P.O. 309975, Williamson responded "It's out of my hands." A copy of the October 18, 2022, text message exchange is attached as Exhibit T.

43.     On or about November 10, 2022, the Government sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable. A copy of the Government's Letter of Concern is attached as Exhibit U hereto.

44.     JFTI then sent a letter to JET dated November 14, 2022, informing JET that it considered JET to be in breach of P.O. 309975 based on the Government's Letter of Concern and provided JET until 12:00 noon on Wednesday November 23, 2022, to complete performance and cure its alleged breach. A copy of JFTI's November 14, 2002, letter is attached as Exhibit V hereto.

45.    JET denied any breach and commenced negotiations, but JFTI failed to acknowledge that JET had complied with the terms and conditions of the purchase order. By letter dated December 9, 2022, JFTI notified JET that P.O. 309975 was terminated for cause. A copy of JFTI's December 9, 2022, letter is attached as Exhibit W hereto.

46.    Neither JFTI nor the Government made any payments to JET under the purchase order, which was wrongfully terminated.[1]

47.    The Government in collaboration with JFTI also made the software and its documentation available to other parties, including Precise Systems. Specifically, on information and belief, PMA-209 awarded Support Contract number N0042122R3013 to Secise/Precise around January 10, 2024. In the Statement of Work published by PMA-209, on June 15, 2023, the contract was to be awarded to a contractor having "[d]emonstrated experience with adaptive layer framework." A copy of the relevant contract paragraphs is attached as Exhibit X.

48.    On information and belief, the Government withdrew Support Contract number N0042122R3013 from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems.

---

[1] Separate actions for infringement of copyright (U.S. Court of Federal Claims, No. 24-1166 C) and tortious conversion in violation of the Federal Tort Claims Act, 28 U.S.C. § 1346, (administrative claim submitted to the Department of Navy) are being brought against the United States. Plaintiff has also sued JFTI for infringement of copyright, violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, conversion, breach of contract, violation of the Maryland Uniform Trade Secrets Act, Md. Commercial Law Code §§ 11-1202 through 11-1207 (2022), and breach of contract. *See JET v. JFTI*, 8:24-cv-01628 (D. Md. June 5, 2024).

## IV.    CAUSES OF ACTION

## COUNT I: BREACH OF AN IMPLIED-IN-FACT CONTRACT

49.    Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-48.

50.    Plaintiff had an implied-in-fact contract with the United States by and through DoN to deliver Plaintiff's proprietary Baseline ALF software products and documentation for an agreed purchase price of $4,074,000 ($4.074M). The DoN intended to purchase in later purchase orders not only SDK and Core, but also intended to have Plaintiff integrate into DoN's Mission Computer Adjunct Processor via Red Hat Linux Operating System (also described as RHEL).

51.    Plaintiff has met the pleading requirements for an implied-in-fact contract, namely, that there was: (1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States in contract. *Panther Brands, LLC v. United States*, 146 Fed. Cl. 204, 214 (2019).

52.    Mutuality of intent to contract is established by Plaintiff's communications with DoN representatives either directly or indirectly through JFTI as shown in the foregoing paragraphs, specifically ¶¶ 16-18, 20, 21, 33, 36, 39-42 and Exhibits B-F, L, O, and Q-T attached hereto. DoN asked JFTI to issue a purchase order to JET for JET's Baseline ALF software products and documentation. *Supra*, ¶ 19. JFTI issued P.O. 309975, *see supra* ¶ 26 and Exhibit J hereto. The purchase order provided for delivery to JFTI on or before September 11, 2022. *Supra* ¶ 31. However, before the delivery, Plaintiff negotiated a separate oral agreement with DoN to deliver the source code and

documentation directly to the Government. *Supra* ¶¶ 33-37, 39, 48, 50-52, and Exhibits L-O and Q, attached hereto. These discussions effectively made the DoN a party to the Purchase Order. More evidence that the Government became a party to the Purchase Order is that PMA-209 instructed JFTI to amend the Purchase Order to include direct delivery of ALF Core and SDK to the Government. *See supra* ¶¶ 38, 40 and Exhibits P and R, attached. These components were critical to DoN because they would allow DoN to build the software products themselves without Plaintiff's help.

53.    Lack of ambiguity in offer and acceptance is established through the same foregoing communications.

54.    There was consideration in the exchange of promises, including a promise implied by DoN to pay the contract price of $4,074,000. The Government also offered to pay 50 % for what had been delivered to obtain ALF Core, SDK and support for MULE. *See supra* ¶¶ 38-40. Kevin Pilkerton explicitly admitted to Scott Jaster that he personally worked to get JET 50% payment on P.O. 309975. *See* supra ¶ 42.

55.    Upon information and belief Kevin Pilkerton and Jeff Williamson of DoN had actual authority, express or implied, to bind the United States in contract.

56.    Plaintiff satisfied all terms and conditions of P.O. 309975 and yet neither Defendant nor JFTI paid the purchase price or made any payments at all.

57.    Under Maryland law, elements of a breach of contract are: (1) a contractual obligation and (2) a material breach of that obligation. *Chubb & Son v. C & C. Complete Servs., LLC*, 919 F. Supp. 2d 666, 678 (D. Md. 2013). Further, and under Maryland law, a claim asserting breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff

.and a breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 440 (Md. 2010) (quoting *Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 369 A.2d 566, 569 (Md. 1977)) The Exhibits provided herein along with the facts alleged in this Claim establish that a contract exists, JET performed its duties under the contract and neither the Government nor JFTI made payment.  All of the foregoing is certain and definite.

58.    Any conditions precedent have been satisfied by JET. The clear intent of JET was that once there was compliance with the official request, the purchase order payment was due.

59.    The contract is clear that JET was to receive payment upon the compliance with the terms and conditions of the contractual documents cited herein. The simple language within such contractual documents makes it clear that the performance by JET evidences the satisfaction by JET of its performance under the contractual documents.

60.    As JET has fulfilled all conditions precedent, performance by JFTI and the Government, in remitting full payment (and now with interest given the vast amount of time since performance by JET was completed) is due without any excuse relative to performance by JFTI.

61.    The Request for Quote. The August 5, 2022, request has, in part, the following language:

> "All Baseline ALF Documentation/Deliverables is to be delivered with Government Purpose data rights. No integration support or training is required at this time. The Government requests physical delivery of software and documentation via CD or via DoD SAFE. Government approval will be required in order to facilitate payment".

See Exhibit H hereto.

16

62.    The official request, as set forth above, indicates that no integration support or training was required. The "no training" language was in the original official request and in the purchase order (all prepared by JFTI). There was never a written agreement modifying the "no training" language. Delivery was made pursuant to the contract. It is noteworthy that JET delivered precisely that which it was to deliver, and the items delivered were subsequently verified to be delivered and completely functional by PMA-209/MULE. *See supra* ¶ 41.

63.    The Quote, attached as Exhibit I hereto, contains the following language: "Baseline ALF Software, to include build instructions, all binaries, source code, specify software/hardware dependencies, and container images (if applicable). All software is to be delivered with Government Purpose data rights. Baseline ALF Documentation and all related Deliverables."

64.    All "applicable" and available products were delivered as related to the defined list in the Request for Quote at section 2. A clear, concise, and exact list of the deliverables was sent to PMA-209; and there was an agreement as to those specific items only. The purchase order dollar amount confirmed the exactitude displayed as to that which was required from JET.

65.    Further, and for purposes of this claim, a build (or build instruction) is a set of executable code that is ready to be installed onto a customer's system. In this case, the software build was an ALF baseline product targeting VxWorks 653 operating system on PowerPC processor architecture. It was successfully verified as buildable and able to be installed in the government's lab on their system.

66.    Training: Although JET was not required to provide any training (or

integration/support) according to the purchase order, JET was directed by JFTI under

threat of being held not in compliance with the terms of the Purchase Order to provide

training and integration/support post-delivery. JET, notwithstanding that it had no

obligation to provide such training/instructions, did provide build instructions, two

additional documents/guides, the latest capabilities/versions of SDK and Core (originally

intended to be the immediately following purchase order and pre-funded as such on

JFTI's contract in preparation), the project configuration files used to build/compile,

software adapter products to account the MULE's lab deficiencies and lack of

capability/knowledge, on-call support, and meetings.

67.    The Government's Letter of Concern, attached as Exhibit U hereto.

In Paragraph 6 within the Letter of Concern, it is stated that:

> per the ALF ADD, Section 1.1 Paragraph 1, 'ALF is a modular and
> extensible framework that consists of ALF CORE, ALF SDK, ALF apps,
> and ALF Products.'
>
> The term "ALF" as it appears in the documentation refers to an overall
> program and is JET's own marketing name. The official Request for Quote
> and the purchase order requested a "Baseline ALF Software" product in
> line item #1, whose deliverables are enumerated in line item #2 of the
> official request. Training materials, guides, troubleshooting, lessons
> learned, etc. were explicitly NOT included in the delivery per the official
> request. Note that it is clear that, within the official request: "3: No
> integration support or training is required at this time."

68.    To better understand this, it is important to consider the definitions of each

abbreviated item (none were required by the official Request for Quote or the purchase

order):

a.    ALF Core - Contains the cross-platform ALF framework components and is the

developer Application Programming Interface ("API") used by the ALF Framework. ALF

Core does not include executable code. ALF Products can use ALF Core (but are not required) to target a specific operating environment (Hardware / Operating System). ALF Core comprises header files (function signatures) that define to software developers how to perform the following operations in ALF:

- Service Orchestration

- Transport Services

- Health Monitoring

- Diagnostic Services

Customers are able to write their own APIs as desired or purchase APIs from JET.

b. ALF SDK – The development environment for ALF Applications and systems, including tools and plugins for Integrated Development Environments. ALF SDK enhances, does not replace, existing software development processes (such as WindRiver's Workbench) and is NOT part of the final mission product. The SDK is a separate product used to build ALF software components and includes the environment and tools that make a system image. The SDK components themselves are not part of or required for the final executable image that would run on the system, they are only used to help JET and/or ALF users more rapidly develop that image. Customers are not bound to JET's SDK products; they are able to write their own SDK tools or purchase JET's.

c. ALF App - An application that uses ALF Core and targets an ALF Product. ALF Apps may be deployed to any supported ALF Product. They also may be migrated to other ALF Products with reduced development time. ALF Apps can be reused to create

more complex software capabilities. It is imperative to recognize that no ALF App was defined as a specific deliverable.

d.      ALF Product - An implementation of ALF that targets a specific operating system and processing architecture as requested by a customer. In the case of this P.O., the ALF Product delivery was targeted towards VxWorks Operating System, and PowerPC Processing architecture, per the government's direction.

69.     Once again, it is noteworthy that JET verified with the MULE that the enumerated deliverable components have all been received by the Government, built (by the Government), deployed (by the Government), and are in working order. This has been demonstrated in both JET and MULE lab environments.

70.     Thus, JET has complied with the contract documents, has satisfied any conditions precedent relative to same, and is entitled to immediate and full payment from JFTI along with all interest from the date payment was due plus consequential damages.

71.     Further, The Letter of Concern in paragraph 2 also indicates that the software is to be delivered "using DL-PSC-81488" as guidance. There is no question that JET delivered the agreed upon software in a manner consistent with DL-PSC-81488.

72.     The United States materially breached its contract by not making payment to JET.

73.     Damages serve to make the non-breaching party whole. *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380. Plaintiff is entitled to and seeks reliance damages, restitution damages, and expectation damages, which it will prove at trial.

74.    Reliance damages allow the non-breaching party to "'recover expenses of preparation of part performance, as well as other foreseeable expenses incurred in reliance upon the contract.'" *Hanson Bancorp, Inc. v. United States*, 367 F.3d 1297, 1309 (Fed. Cir. 2004) (quoting John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 14.9 (4th ed. 1998). JET is entitled to and seeks at least $ 6M in reliance damages for operating costs bridging from late 2022 until resolution, which if necessary it will prove at trial. *See* Impacts Assessment for ALF theft by Navy, Exhibit Y hereto, at Bates number 3.

75.    Restitution damages seek to return any benefit the breaching party gained to the non-breaching party. *See* Restatement (Second) of Contracts § 373. JET is entitled to restitution but will need discovery in a court to obtain evidence to prove the amount.

76.    Expectation damages give the non-breaching party "the benefits [it] expected to receive had the breach not occurred." *Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1361 (Fed. Cir. 2010). To be awarded expectation damages, the non-breaching party "must establish by a preponderance of the evidence that (1) [damages] were reasonably foreseeable or actually foreseen by the breaching party at the time of contracting; (2) [damages] [were] caused by the breach; and (3) the amount of the [damages] has been established with reasonable certainty. *See Anchor*, 597 F.3d at 1361 (citing *Cal. Fed. Bank v. United States*, 395 F.3d 1263, 1267 (Fed. Cir. 2005); *Energy Cap. Corp. v. United States,* 302 F.3d 1314, 1324-25 (Fed. Cir. 2002)). JET is entitled to and seeks at least $ 1,012.19 M in expectation damages as itemized below:

•    Financial losses directly due to non-payment, totaling $9.65 M, *see* Exhibit Y hereto at Bates number 3:

- $4.1 M for ALF baseline framework (delivered as verified complete and functional);

- $4.25 M for version 1 of the ALF SDK and Core API implementations (forced to deliver); and

- $1.3 M for labor and SW adaptors required by PMA209 post-delivery, but in direct violation of the P.O. contract language (forced to deliver);

- Loss of impending work, totaling $1,002.54 M, *see* Exhibit Y hereto at Bates numbers 4-6:

  - $7.25 M for integration into PMA209's Mission Computer Adjunct Processor ("MCAP");

  - $6 M for ARC-210 ALF integration and application development;

  - $12 M for requested ROM effort to Soft the ALF hosted onto PMA209's Mission Computer Alternative ("MCA");

  - $20 M for planned OTA for the purposes of continuing to build out ALF for PMA209's purposes to integrate with other PMA platforms that were in planning;

  - $85.84 M for E-2D Hawkeye Cockpit Technical Refresh ("HECTR") work of which JET was the Software Development Lead;

  - $21.45 M for initial F-18 work relating to upgrading a subset of PMA209's mission computer and sub-systems to provide ALF capabilities; and

  - $850 M loss of business for 17 platforms over 5-10 years.

This does not include damages that cannot be quantified at this time for (1) reputational/brand damage leading to loss of work; (2) organizational

knowledge/capability and personnel loss; and (3) loss of ability to invest/fund research and development for future business development efforts. *See* Exhibit Y at Bates numbers 7-9. These will be proved after discovery at trial.

WHEREFORE, Plaintiff prays for the following relief:

• Judgment in favor of JET and against the United States on JET's claim for breach of an implied-in-fact contract;

• An award of reliance damages in the amount of at least $ 6 M to be proven at trial;

• An award of restitution damages in an amount to be proven at trial;

• An award of expectation damages in the amount of at least $1,012.19 M to be proven at trial; and

• Any other relief the Court finds appropriate and just.

January 29, 2025

Respectfully submitted,
JET Systems, LLC

By its attorneys,
/S/ Richard S. Toikka
Richard S. Toikka
Counsel of Record
WILT TOIKKA KRAFT, LLP
1629 K Street, NW, Suite 300
Washington, DC  20006
202-508-3648 (phone)
202-521-9803 (fax)
240-888-8110 (mobile)
rtoikka@wtk-law.com (email)

Russell O. Paige
Of Counsel
WILT TOIKKA KRAFT, LLP
1629 K Street, NW, Suite 300
Washington, DC 20006
202-508-3648 (office)
202-521-9803 (fax)
703-609-0771 (mobile)
rpaige@wtk-law.com (email)

Counsel for Plaintiff JET Systems, LLC